IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CANDI LYNN M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-062-DGW[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in September 2013, alleging disability as of March 6, 2013. After holding an evidentiary hearing, an ALJ denied the application in January 2016. (Tr. 9-30). Plaintiff sought judicial review, and the case was remanded to the agency. (Tr. 1271-1287). On remand, the same ALJ again denied the application in October 2018. That decision is the final agency

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 8 & 13.

decision now subject to judicial review. (Tr. 1165-1181). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in assessing plaintiff's RFC because he ignored her use of prescription pain medications and referrals to pain management and orthopedic specialists.

2. The ALJ failed to consider whether plaintiff was entitled to a closed period of disability.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that

the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity from the alleged onset date through her date lase insured, December 31, 2017. He found that plaintiff had severe impairments of lung cancer with surgical intervention, in remission; COPD; left shoulder and upper extremity impairment, including left shoulder brachial plexopathy; and degenerative disc disease of the cervical spine.[3] He also found that her mental impairments of affective disorder and anxiety disorder were not severe.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with a number of physical limitations. As is relevant here, she was limited to only occasional fingering, handling, and feeling with her left upper extremity and no overhead reaching with her left upper extremity.[4] Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national and regional

---

[3] "Brachial plexopathy is a neurologic affliction that causes pain or functional impairment (or both) of the ipsilateral upper extremity. It may result from medical conditions and from violent stretching, penetrating wounds, or direct trauma." https://www.ajronline.org/doi/full/10.2214/AJR.12.9554, visited on November 6, 2019.

[4] The ALJ assessed the same RFC as he did in his first denial. See, Tr. 17.

economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1965 and was 52 years old on her date last insured. (Tr. 189). She said she was disabled because of lung cancer; nerve damage in her left arm; fatigue; depression; loss of mobility, strength, stability, endurance and concentration; and emphysema with shortness of breath. She had a tenth-grade education and had worked as a dryer operator in a printing factory, a laundry worker, a machine assistant, a production worker in a flour factory, and a stocker in a grocery store. (Tr. 193-194).

In June 2014, plaintiff reported that she had constant pain in her neck, left arm, chest, breast and shoulder blade. Her pain began after surgery in April 2013. She was taking Oxycodone and Gabapentin, which did not relieve all her pain. The medications made her feel tired and spacy. She was not able to do much because of her pain. She had a burning feeling in her left arm. Her left armpit felt like it had needles sticking in it. (Tr. 286-289).

2. **Evidentiary Hearings**

Plaintiff was not represented by an attorney at the evidentiary hearing in

November 2015. (Tr. 34).

Plaintiff testified that she was in pain all the time. She had pain in her left arm. She had nerve damage from the cancer surgery. (Tr. 52-54).

Plaintiff was unable to lift her left arm over her head. She could raise it to chest height. She also said she had trouble "putting it all the way out." The ALJ asked her if she had any other limitations in using her left arm or hand. She said, "My left hand and arm like pulling." (Tr. 71-73).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but she could do other jobs such as usher, office helper, and sales attendant. (Tr. 80-83).

Plaintiff was represented by an attorney at the second evidentiary hearing in October 2018. (Tr. 1196).

Plaintiff testified that she could not work because of pain in her left arm and ribcage area. She held her left arm against her body to lessen her pain. Moving her arm away from her ribcage caused stabbing pain. (Tr. 1201-1206). She could not do something that required her to have her hands in front of her all day. (Tr. 1211).

Plaintiff did not follow-up on referrals to specialists because of financial reasons. She still owed about $5,000.00 for bills from her cancer treatments. She and her husband sold their house to cover bills and moved in with his sister. (Tr. 1220-1221).

During chemotherapy, plaintiff felt sick, tired, and fatigued. She had nausea and vomiting for three days after a treatment and was fatigued all the time between sessions. Her chemotherapy ended in May 2014. She continued to feel fatigued for two months after that. (Tr. 1224-1226).

### 3. Relevant Medical Records

A large mass was detected in the upper lobe of plaintiff's left lung on x-ray in March 2013. (Tr. 410). She was diagnosed with non-small cell cancer with chest wall invasion. The left upper lobe was surgically removed in April 2013. During the surgery, the second, third, fourth and fifth ribs were resected, and the fourth and fifth ribs were reconstructed with a titanium plate. (Tr. 447-449).

In addition to the cancer, a chest CT scan showed severe emphysematous changes in her lungs with scarring in the left lower lobe and emphysematous bullae in the upper lobes. (Tr. 336).

Following surgery, plaintiff was treated by Dr. Hanna Saba at the Crossroads Cancer Center. In May 2013, Dr. Saba noted that she had a brachial plexus injury following the surgery and had motion and sensory problems with her left arm. Dr. Saba noted that she was at a high risk for recurrence of cancer and counselled her regarding a clinical trial that randomized patients to different types of chemotherapy plus/minus Avastin. (Tr. 500-501).

Plaintiff began chemotherapy in June 2013. She elected to participate in the clinical trial and was assigned to the group that received chemotherapy plus Avastin. (Tr. 478). She finished her "main treatment" chemotherapy in August

2013.  Dr. Saba noted that she was doing well with no significant complications. Dr. Crabtree, the surgeon, had repeated a CT scan and there was no sign of recurrent cancer.  She was to continue receiving Avastin for a year from the beginning of chemotherapy.  Her brachial plexopathy was better and she was gaining function of the left arm "slowly but steadily."  Dr. Saba again noted anxiety, depression and labile mood.  (Tr. 627-628).

Plaintiff continued to receive Avastin for a full year after the beginning of chemotherapy.   This was administered once every three weeks at the Crossroads Cancer Center.  (Tr. 624-625).  The records of the Crossroads Cancer Center are located at Tr. 341-415, 457-508, 592-679, and 813-856.  During the year of chemotherapy, plaintiff complained repeatedly of persistent nausea and occasional vomiting.  See, e.g., Tr. 635, 633 (noting almost resolved grade 2 toxicity from chemotherapy), 631 (administered two additional days of steroids to prevent severe nausea and vomiting like last time); 624, 621, 842, 838, 835.  She also complained of fatigue.  See, e.g., 635, 631, 629, 627, 624, 842, 838, 835, 833.

In August 2013, Dr. Crabtree noted that that she was undergoing chemotherapy and was having "significant fatigue."  She was doing physical therapy for her left arm and was at the point where she could grasp something with her left hand.  (Tr. 761).

Plaintiff completed her chemotherapy in May 2014.  She was cancer free and "doing great."  She did still have some limitation of the range of motion of the left arm.  (Tr. 816-817).

Plaintiff saw Dr. David Carpenter, a neurologist, for her left arm problems. (Tr. 516-527, 805, 1449-1452). He diagnosed acquired nerve palsy of the brachial plexus on the left at the first visit. She was undergoing physical therapy and was to continue with that. He prescribed Gabapentin. (Tr. 525-526). In February 2014, plaintiff continued to have weakness and discomfort in the left arm. She had a decreased range of motion of the left shoulder. Dr. Carpenter suggested a referral to an orthopedic surgeon for possible steroid injections in her shoulder. Plaintiff elected to try an increased dose of Gabapentin instead. He asked her to have an x-ray of the cervical spine. (Tr. 799). The x-ray showed degenerative changes. He recommended that she continue with the increased dosage of Gabapentin. (Tr. 804-805).

Dr. Carpenter noted improved strength in her previously weak muscles in June 2014, but she continued to have pain in her neck and left shoulder and "findings on examination consistent with frozen shoulder." She was still taking Gabapentin. He recommended that she see an orthopedic surgeon, but she and her husband said they had outstanding medical bills and were not certain they could pay for this additional treatment. He prescribed physical therapy and a muscle relaxer. (Tr. 1451-1452).

Plaintiff saw the surgeon, Dr. Crabtree, in March 2015. She was cancer-free. However, she still had pain over her left chest wall where the resection was done, and she was taking OxyContin. Dr. Crabtree recommended that she see a pain management specialist because of her persistent pain. (Tr. 1152-1153).

Plaintiff's primary care physician was Dr. Sean Flynn. An office note from July 2015 indicates that Dr. Flynn saw plaintiff to discuss her medications. She had "side pain." She had chronic pain in her upper left chest and shortness of breath. She took Percocet, Gabapentin and Flexeril. Dr. Flynn recommended that she continue on her current medications. (Tr. 1154-1156).

In February 2016, Dr. Flynn found tenderness in the left lateral chest wall and pectoralis musculature on exam.[5] Muscle strength was full in all major muscle groups. He noted that she was getting "indifferent results" from a combination of Gabapentin and Percocet (Oxycodone-Acetaminophen). He recommended that she increase the dosage of Gabapentin. (Tr. 1960-1963). Dr. Flynn again found tenderness in the left lateral chest wall and pectoralis musculature in September 2016, May 2017, and December 2017 even though she was taking Gabapentin, Percocet, and Flexeril. (Tr. 1952-1976).

## **Analysis**

Plaintiff is correct that the ALJ failed to adequately consider her use of pain medications.

The ALJ was required to base his RFC assessment on all of the evidence, including the medical treatment and pain medications. SSR 96-8p, 1996 WL 374184, at *5. The RFC assessment must contain "a thorough discussion and

---

[5] Pectoralis refers to "either of two muscles on each side of the upper and anterior part of the thorax, the action of the larger (pectoralis major) assisting in drawing the shoulder forward and rotating the arm inward, and the action of the smaller (pectoralis minor) assisting in drawing the shoulder downward and forward." https://www.dictionary.com/browse/pectoralis, visited on November 6, 2019.

analysis of the objective medical and other evidence, including the individual's complaints of pain . . . ." *Ibid*., at *7.

Here, the ALJ stated that the new evidence received after remand indicated that plaintiff had "some pain over her left chest with continuing narcotic medication on November 19, 2015." (Tr. 1176). He noted that plaintiff reported "chronic pain in her left upper chest and left axilla [armpit] despite the use of pain medication" in December 2017, but said there were no findings on exam. (Tr. 1177). Both of these were reference to visits with Dr. Flynn.

The ALJ's discussion of Dr. Flynn's records is incomplete and inaccurate. The ALJ was incorrect in saying there were no findings on exam at the December 2017 visit; the doctor's findings are located at Tr. 1974 and include "tender left lateral chest wall and pectoralis musculature." He made no reference at all to the visits with Dr. Flynn in September 2016 and May 2017. Dr. Flynn again prescribed Percocet and Gabapentin at those visits. And, he never acknowledged that Dr. Flynn detected tenderness in the pectoralis musculature as well as in the chest wall. While it is true that an ALJ is not required to discuss every piece of evidence in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), collecting cases.

As plaintiff points out, it is unlikely that Dr. Flynn would have continued to prescribe Percocet and Gabapentin if he did not believe that plaintiff suffered from

serious pain. See, *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). Rather than confront the issue of plaintiff's pain head-on, he sidestepped the issue by justifying his RFC assessment based on her lack of significant deficits in gait, motor strength, sensation, and reflexes. (Tr. 1176). However, he did not explain how lack of deficits in those areas negates pain in her chest wall and pectoralis musculature.

The ALJ also failed to adequately consider the referrals to pain management and orthopedic specialists. The ALJ minimized the seriousness of plaintiff's pain by saying that she sought little treatment for her arm and chest pain beyond medication, and she "did not see an orthopedic or pain specialist." (Tr. 1176). However, while her doctors suggested such referrals, plaintiff testified she could not afford to follow those referrals. Her testimony is corroborated by Dr. Carpenter's note from June 2014. (Tr. 1451-1452). The ALJ's error here was two-fold: he ignored the referrals to specialists, and he improperly discounted her claims because she did not see specialists. It was error for him to discount her claims without considering that she could not afford the recommended treatment. *Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018); *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013).

The ALJ also erred in failing to consider whether plaintiff was entitled to a closed period of disability. A claimant is entitled to an award of temporary benefits if she meets the agency's definition of disability for 12 months or longer, even if she later recovers well enough to return to work. See, 20 C.F.R. §

404.1594.

This case was remanded the first time in part because the ALJ failed to consider plaintiff's course of chemotherapy and the significant side effects she suffered during treatment. See, Tr. 1286. The ALJ has again failed to discuss those records.

Defendant argues that the ALJ necessarily considered whether plaintiff was entitled to a closed period. He cites *Reed v. Colvin*, 656 F. App'x 781, 788 (7th Cir. 2016), and *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Those cases are distinguishable because the ALJ's consideration of the relevant medical evidence in those cases was sufficient to draw that conclusion. Here, without an analysis of the chemotherapy records, it is impossible to say with any confidence that the ALJ adequately considered whether she was entitled to a closed period.

The Court also notes that the ALJ was wrong about plaintiff's age category on her date last insured. (Tr. 1179). She was in the "approaching advanced age" category, and, with no transferrable skills, she would be deemed disabled if she was limited to sedentary work. Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.

This Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:   November 22, 2019.

*Donald Wilkerson* (signature)

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**